Opinion filed April 19, 2007

















 
 
 The court on this day, July 12, 2007, has withdrawn this opinion and
 judgment dated April 19, 2007, and substituted the opinion and judgment dated
 July 12, 2007.
 
 







 
 
  
 
 




Opinion filed April 19, 2007

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

                                                          No. 11-06-00018-CV 

                                                    __________

 

                      GARY
BOLEN, INDIVIDUALLY, AND PHARAOH

                                      OIL
& GAS, INC., Appellants

 

                                                             V.

 

                             IMPERIAL
PETROLEUM, INC., Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                         Midland
 County, Texas

 

                                                Trial
Court Cause No. CV 45060

 



 

                                              M
E M O R A N D U M   O P I N I O N

 








Imperial Petroleum, Inc. sued Gary Bolen,
individually, and Pharaoh Oil & Gas, Inc. for injunctive relief as well as
for damages in connection with alleged interference with saltwater
disposal.  The trial court granted a
temporary injunction.  Subsequently, in a
bench trial on the merits, the trial court granted permanent injunctive relief
in favor of Imperial against Bolen and Pharaoh. 
The trial court also awarded Imperial actual damages in the amount of
$155,878.41, in addition to attorney=s
fees of $9,744.  We affirm the judgment
of the trial court.

In January 2000, Hillside Oil & Gas, LLC,
purchased a lease in Pecos
 County known as the
University BX from Geronimo Holding Corporation.  Pharaoh also operated an oil and gas unit in
the area known as the Taylor-Link Unit. 
Pharaoh had previously owned the University BX lease.  Geronimo purchased the lease from
Pharaoh.  It appears from the record
that, when Geronimo sold the lease to Hillside, Hillside
borrowed $300,000 and that that money was paid to Bolen and Pharaoh.  Five days after Hillside bought the
University BX, Hillside, Bolen, and Pharaoh entered into a letter agreement by
which Hillside was given the right to dispose
of saltwater, for free, from the University BX into a saltwater disposal well
on the Taylor- Link property.  Bolen and
Pharaoh also granted Hillside a pipeline
right-of-way to accommodate the saltwater disposal system. 

In March 2003, Hillside
assigned its interest in the University BX to Imperial.  Bolen=s
daughter owned an eight percent overriding royalty interest in the University
BX lease.  In the summer and fall of
2004, Bolen began discussions with Imperial regarding buying the University
BX.  Imperial did not want to sell the
lease.  Imperial alleges that all went
well under the saltwater letter agreement until September or October 2004 when
Bolen and Pharaoh interrupted the saltwater disposal process by shutting in the
pipeline going to the disposal well.

Imperial sued Bolen and Pharaoh for a temporary
injunction, a permanent injunction, and damages accruing during the time that
the saltwater disposal system was shut off. 
Bolen and Pharaoh did not appear for the temporary injunction hearing,
and the trial court issued a temporary injunction.  Later, the day before a contempt motion was
to be heard in relation to the temporary injunction, Bolen and Pharaoh=s lawyer sent a memo to Imperial=s lawyer stating that the disposal
system was immediately restored to its prior working condition when appellants
were served with the temporary injunction.

There are no challenges to the findings of the
trial court that Bolen and Pharaoh halted the flow of saltwater from the
University BX to the Taylor-Link.








In their first two points of error, Bolen and
Pharaoh complain that the permanent injunctive relief is not in accordance with
the terms of Tex. R. Civ. P. 683
and that the evidence is not sufficient to reasonably specify and describe the
act sought to be restrained. 
Specifically, they argue that the injunction makes reference to another
document B the
letter agreement B and
therefore violates Rule 683.

In its judgment, the trial court granted a
permanent injunction against Bolen and Pharaoh. 
Subsequently, in response to allegations contained in a motion for new
trial filed by Bolen and Pharaoh, the trial court amended its permanent
injunction.  In its final form, the
injunction is as follows:

IT IS FURTHER ORDERED that a permanent injunction
issue and the Clerk of this Court is ordered to issue a permanent injunction to
Gary Bolen and Pharaoh Oil & Gas, Inc. permanently enjoining the Defendants
from interfering with or taking any action to halt or disrupt Imperial
Petroleum, Inc.=s right
to transport and/or dispose of saltwater from the subject University BX Lease
into Pharaoh Oil & Gas, Inc.=s
saltwater disposal well on the Taylor-Link lease located in Pecos County,
Texas, in accordance with the terms of the parties=
original agreement dated January 25, 2000.

 

Bolen and Pharaoh direct one of their arguments at
the reference in the injunction to the parties=
agreement and maintain that Rule 683 has been violated.  Rule 683 does not apply to permanent
injunctions.  Qaddura v. Indo-European
Foods, Inc., 141 S.W.3d 882, 892 (Tex. App.CDallas
2004, pet. denied); Shields v. State, 27 S.W.3d 267, 274 (Tex. App.CAustin 2000, no pet.); Carrell v.
Richie, 697 S.W.2d 43, 46 (Tex. App.CAustin
1985, writ ref=d
n.r.e.); Spinuzzi v. Town of Corinth, 665 S.W.2d 530, 534 (Tex. App.CFort Worth 1983, no writ); Tex.
Liquor Control Bd. v. Bacon, 443 S.W.2d 312, 317 (Tex. Civ. App.CAustin 1969), rev=d on other grounds, 456 S.W.2d 891
(Tex. 1970); Alexander Schroeder Lumber Co. v. Corona, 288 S.W.2d 829
(Tex. Civ. App.C
Galveston 1956, writ ref=d
n.r.e.).

Bolen and Pharaoh also argue that the injunction
calls upon them to draw their Aown
inferences and conclusions as to the precise nature of the activity enjoined.@ 
They also challenge Athe
sufficiency of evidence submitted at trial to identify with reasonable
certainty the property subject to the injunction.@  Tex.
R. Civ. P. 301 requires that a final judgment be definite, clear, and
precise.  The judgment granting the
permanent injunction in this case tells Bolen and Pharaoh not to interfere with
transportation and disposition of saltwater from the University BX to the Asaltwater disposal well@ on the Taylor-Link lease.








Bolen and Pharaoh argue on appeal that there are
some 20 disposal wells on the Taylor-Link lease and that they are left to
determine which well the trial court is talking about.  Raymond Zamora  Jr. worked for appellants supervising
pumpers.  He testified that he knew which
well was used for the disposal of saltwater from the University BX.  More importantly, here follow excerpts from
Bolen=s trial
testimony:

[PLAINTIFF=S
COUNSEL] Q:  You=ve
got a file in your office that has utility bills in it, right?

 

A: But we have the University BX hooked up to one
injection well, and the only utility bill that it has to dispose of that water
is their utility bill, not my utility bill.

 

. . . .

 

[DEFENSE COUNSEL] Q: [F]irst of all, do you know
what well the saltwater disposal well is?

 

A: Yes, I do.

 

The evidence, including Bolen=s own testimony, shows that appellants
knew to which well the court referred. 
In their original motion for new trial, appellants had complained that
the injunction entered by the trial court covered Aone
or more wells.@  In response to appellants= complaint, the trial court amended the
permanent injunction to provide for a single well rather than multiple wells, a
well known to appellants to be the well into which appellee was disposing
saltwater.  The judgment is definite,
clear, and precise.  Appellants know what
is required of them under the injunction, and their first two points of error
are overruled.

In their third point, appellants claim that the Atrial court erred in awarding damages
to [a]ppellee based upon lost profits because insufficient evidence was
submitted at trial to calculate the amount of all inherent costs associated
with the generation of profits.@  In their fourth point of error, appellants
maintain that the trial court erred in its damage award because Ainsufficient evidence was submitted at
trial to support a finding of [a]ppellee=s
capability to produce and sell oil and gas at a profit.@  Appellee claims that appellants have waived
these issues on appeal because they either did not object at the trial court
level or they offered different objections to the trial court than are being
offered on appeal.








During the trial, appellee offered testimony in
support of its claim for damages.  This
testimony was summarized in its Exhibit 14. 
There was no objection to the testimony, and when the exhibit was
offered, appellants= attorney
responded, ANo
objection.@  The trial court then admitted the
exhibit.  Appellants voiced no objections
regarding damages until they filed their second amended motion for new
trial.  In their second amended motion for
new trial, appellants alleged that the court Acommitted
error as a matter of law in awarding damages to Plaintiff for the value of
alleged lost production of oil and gas.@  They also claimed that the court applied an
incorrect measure of damages because there was no evidence that the oil and gas
that was not produced while the saltwater disposal system was shut off was
permanently gone.  They do not claim that
the trial court abused its discretion by applying an incorrect measure of
damages.  In this connection, appellants
refer to Findings of Fact Nos. 12 and 13 and to Conclusion of Law No. 7.  Findings of Fact Nos. 12 and 13 deal with
mitigation of damages and the total damage award.  Conclusion of Law No. 7 addresses the amount
of actual damages and attorney=s
fees.  The trial court denied the motion
for new trial insofar as it related to damages.

Appellants have waived the complaints in these
points for several reasons.  They did not
object at any time that the trial court abused its discretion by applying an
incorrect measure of damages.  Appellants
did not object during the trial about damage-related issues and testimony.   In fact, they told the trial court that they
had no objections.  They made their first
complaint regarding damages in their second amended motion for new trial.  Tex.
R. App. P. 33.1 requires that the record show that the complaint made on
appeal was timely presented to the trial court.  A complaint about the measure of damages that
does not come until a second amended motion for new trial is not timely.   See Watson v. Michael Haskins
Photography, Inc., No. 10-05-00010-CV, 2005 WL 3148074 (Tex. App.CWaco, Nov. 23, 2005) (mem. op.); Miles
v. Ford Motor Co., 922 S.W.2d 572, 591 (Tex. App.CTexarkana
1996), reversed in part on other grounds, 967 S.W.2d 377 (Tex. 1998); Stewart
v. Breese, 367 S.W.2d 72 (Tex. Civ. App.CDallas
1963, writ dism=d
w.o.j.).








Furthermore, appellants have failed to cite any
standard by which we are to review the complaints that they raise in points
three and four.  Additionally, in an
appeal from a nonjury trial, appellants=
brief  must contain complaints directed
at specific findings and conclusions.  A
general complaint about the court=s
judgment will not preserve the point.  Serrano
v. Union Planters Bank,  N.A.,
162 S.W.3d 576, 580 (Tex.
App.CEl Paso
2004, pet. denied).  Appellants have not
challenged any specific findings of fact and conclusions of law in their brief
on appeal.  Further, in their fourth
point of error, appellants cite us to no authority.  See Tex.
R. App. P. 38.1(h).  Additionally,
the complaints that appellants make in their fourth point of error were never
presented to the trial court. See Rule 33.1.

For all of these reasons, appellants have waived
their complaints on appeal as set forth in points three and four, and they are
overruled.

Even if appellants had not waived the complaints
made in points three and four for the reasons stated, we would not sustain
them.  Appellants argue that the evidence
regarding some of the elements of damage is insufficient to support the
findings.  We note that appellants do not
specify in either point of error whether they are arguing legal or factual
insufficiency.  However, in their prayer,
appellants speak to both rendition and remand. 
We can assume, then, that the argument is directed at both legal and
factual sufficiency, although no reference is made in appellants= brief to a standard by which we are to
review these points.

The evidence is reviewed in a bench trial by the
same standards as in a jury trial.  IKB
Indus. v. Pro-Line Corp., 938 S.W.2d 440, 445 (Tex. 1997). 
When we review the legal sufficiency of the evidence, we do so in the
light most favorable to the verdict, and we disregard all contrary evidence
that could have been disbelieved by a reasonable fact-finder.  Ysleta Indep. Sch. Dist. v. Monarrez,
177 S.W.3d 915 (Tex.
2005).  Appellants did not have the
burden of proof on the issue of damages. 
When the party not having the burden on an issue complains about the
legal sufficiency of the evidence to support a finding, the challenge is one of
Ano evidence@
to support the finding.  Serrano,
162 S.W.3d at 579.  There was no
objection to the testimony regarding damages. 
When evidence on damages is admitted without objection, it provides some
evidence of damages.  Chapman v. Coker
Equip. Sales, Inc., No. 07-04-00333-CV, 2006 WL 212091 (Tex. App.CAmarillo,
Jan. 26, 2006) (mem. op.).  The
unobjected-to testimony was some evidence of appellee=s
damages.  Appellants= claim that there was no evidence to
support damages is overruled.








If appellants=
claims are lodged against the factual sufficiency of the evidence, then we must
review the point and set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Here, the
judgment is not contrary to the overwhelming weight of the evidence because
there was no other evidence regarding damages.

In their ASummary
of the Argument,@
appellants say that their sixth argument is based upon the statute of
frauds.  We have been unable to find a
sixth point of error in appellants=
brief.  In any event, the statute of
frauds is an affirmative defense and was not pleaded.  Under Tex.
R. Civ. P.  94, if not
specifically pleaded, the statute of frauds is waived.  Bracton Corp. v. Evans Constr. Co.,
784 S.W.2d 708, 710 (Tex. App.CHouston
[14th Dist.] 1990, no writ).  Affirmative
defenses are waived if the defendant files only a general denial, and unless
tried by consent, the failure to plead a matter of affirmative defense will
preclude a defendant from asserting it.  Id.  Here, appellants filed only a general
denial.  The rule of trial by consent is
limited to those instances where the parties clearly tried an unpleaded issue
by consent.  White v. Sullins, 917
S.W.2d 158, 160 (Tex. App.C  Beaumont 1996, writ denied); see Tex. R. Civ. P. 67.  As the trial court in this case correctly
noted, appellee objected each time that the unpleaded affirmative defenses were
raised.  These issues were not tried by
consent.  To raise these matters for the
first time on appeal is to raise them too late. 
We hold that the same principles apply to appellants= claim in their fifth point of error
regarding mitigation of damages.  That
affirmative defense was not pleaded, and it was not an issue that was tried by
consent as is apparent from appellee=s
objections and the trial court=s
ruling upon those objections.  Any claim
of error regarding the statute of frauds is overruled.  The fifth point of error is also overruled.

The judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

April 19,
2007                                                                          CHIEF JUSTICE

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.