**CITY OF AMARILLO v. HANCOCK.**

No. 6074.

Court of Civil Appeals of Texas. Amarillo.

Sept. 25, 1950.

Rehearing Denied Oct. 30, 1950.

Monning & Monning, Amarillo, for appellant.

Simpson, Clayton & Fullingim, Amarillo (Cleo G. Clayton, Jr., Amarillo, of counsel), for appellee.

STOKES, Justice.

This is an appeal by the City of Amarillo from a judgment entered in the court below on January 18, 1950, in which, after a trial of the issues presented, the court set aside and declared void and of no force or effect an order of the Civil Service Commission of the City of Amarillo demoting the appellee, Clark Hancock, from the rank of captain to that of driver in the Fire Department of the city. The record shows that appellant is an incorporated city, operating under the Home Rule Amendment, Vernon's Ann.St.Const. art.

11, § 5, and statutes enacted pursuant thereto, and that, at a special election, it had adopted the provisions of the. Civil Service Law for its firemen and policemen, Article 1269m, Vernon's Annotated Civil Statutes.

Appellee had been employed as driver and in other capacities in the Fire Department of appellant for some twenty years and, for several years prior to the events which brought about this suit, he had been a captain in the department. The record does not show that the position of captain was superior or of a higher rank than that of driver nor that it paid a better wage but it seems to have been assumed by the parties and the trial court that it was of a higher rank and paid a greater salary.

At about 2:55 a. m. on November 23, 1948, the Central Fire Station of appellant reported to Station No. 4, where appellee was employed, that there was a fire at 306 Northeast Sixth Street. Appellee, as captain, immediately ordered the fire truck from the station and proceeded with his crew to the scene of the fire, which proved to be an establishment known as Thomas Dinner House. The principal room, where guests were served with meals and drinks, was known as the Rumpus Room. This room had been constructed inside with rough lumber and in such manner as to give it the appearance of an ordinary barn, with a kind of balcony, representing a loft, where loose and bailed hay was stored. Supporting the balcony were a number of posts, at least one of which was composed of a 6x6 timber extending from the floor of the Rumpus Room through the balcony to near the ceiling above. The post was housed or covered by 1x8 undressed boards. When appellee and his crew of two other firemen entered the building they found that a hole six or seven inches in diameter had been burned in the board on the north side of this post, evidently having caught fire from an open gas stove seated on the floor in close proximity to it. The firemen gave to the situation such attention as they thought necessary to extinguish the fire and returned to the fire station about a block away. A few minutes after they arrived at the fire station

one of them noticed smoke emitting from the vicinity of Thomas' Dinner House and, about that time, two little girls came running to the station screaming and, when asked by appellee what the trouble was, they implored him to "come quick"; that the Thomas Dinner House "was afire all over." Appellee called the Central Station, asked for assistance and immediately returned with the fire truck and his crew to the scene of the fire where they found the Rumpus Room in flames. After considerable effort the fire was extinguished but a large amount of damage was inflicted upon the building, particularly the Rumpus Room.

On November 30, 1948, George B. Cooper, Chief of the Fire Department, addressed to the Civil Service Commission a complaint in which he charged that the second fire was in the balcony of the Rumpus Room and that it was caused by the original fire burning up the column or post supporting the balcony and that appellee was guilty of negligence in not making a proper investigation and in not discovering fire in the Rumpus Room when he was there on the first call. Because of such negligence, he recommended that appellee be demoted from his position as captain to that of driver in the department. Proper notice was given to appellee and the Civil Service Commission held a hearing which resulted in an order, entered on December 16, 1948, sustaining the charge and appellee was demoted as recommended by the Chief of the the Fire Department.

The record does not show when this suit was instituted but, on January 9, 1950, appellee filed an amended petition in which he alleged all of the facts in connection with his employment and his conduct in connection with the fire at Thomas Dinner House. He alleged that he was not guilty of negligence in connection with it; that the evidence presented at the hearing before the commission was wholly insufficient to support its action; that the action of the Civil Service Commission in demoting him was a discrimination; that, instead of supporting the charges against him, the evidence completely exonerated him and alleged, in effect, that the action of the

commission was not reasonably supported by substantial evidence. He prayed, therefore, that the order of the commission be vacated, set aside and held for naught and that he be reinstated in his position as captain.

Appellant answered by challenging the jurisdiction of the court upon grounds that will hereafter be discussed, and a number of special exceptions and special denials, sufficient to present the issues passed upon by the court below and made by the briefs in this appeal.

The case was submitted to the court, without the intervention of a jury, and resulted in a judgment in favor of appellee upon the ground, as found by the court, that the action of the Civil Service Commission in demoting him was not reasonably supported by substantial evidence. Appellant duly excepted to the judgment, perfected an appeal therefrom and presents the case for review by this court upon five assignments or points of error in which two controlling issues are presented. It contends, first, that the statute, Article 1269m does not provide for an appeal to the district court from an order of the Civil Service Commission in which appellee was merely demoted and not suspended or dismissed from the service. It contends further that, if he did have the right of appeal, he did not perfect it within the ten days provided by the statute and the district court was, therefore, without jurisdiction to try the case. Secondly, it contends that the court below erred in in vacating the order of the Civil Service Commission because the order was reasonably supported by substantial evidence.

Section 18 of Article 1269m, Vernon's Revised Civil Statutes, is titled "Appeal to district court". It makes provision for an appeal within ten days from the decision of the Civil Service Commission by any fireman or policeman who is dissatisfied with such decision and provides that in such appeal, he may ask that any order of "suspension or dismissal" entered by the commission be set aside and that he be reinstated.

Section 19 deals with demotions of employees in the two departments mentioned and provides that the head of the department may recommend to the commission that such an employee be demoted. It further provides that the commission shall have authority to refuse the request but, if the commission feels that probable cause exists, it shall give notice to the employee and hold a hearing. No provision for an appeal from an order or ruling of the Civil Service Commission demoting an employee is provided by either of these sections, and appellant contends that, because of the absence of such a provision, the district court was without jurisdiction to entertain the appeal filed by the appellee in this case. Appellee replies to this contention by the assertion that, although the statute does not provide for an appeal from such an order, the right to attack an order of demotion, by a proceeding in the district court, is guaranteed to him by the Constitution and the guaranties of due process, article 1, § 19.

■ It is well-settled that, in pursuing an appeal under a statute, the provisions of the statute must be strictly followed. If appellee had the right to appeal under the statute and no other right of appeal to the district court than that provided by Section 18 had been available to him, appellant's contention would have to be sustained because that section gives no right of appeal by an employee who has merely been demoted and it seems to be conceded that the suit was not filed in the district court until long after the expiration of the ten days provided by it.

■ Section 19, immediately following Section 18, deals with demotions and the rights of employees whose demotions have been requested by the head of the department. It does not provide for an appeal to the district court but it is well-settled by the decisions that, even without express statutory authority, the orders entered by an administrative body, such as the Civil Service Commission of the City of Amarillo, are subject to judicial review. Denison v. State, Tex.Civ.App., 61 S.W.2d 1017; English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633; Fire Dept. of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664, 666.

In the case last cited, the Supreme Court said: "The exercise of this jurisdiction by the courts is not in derogation of the separation of powers among the three branches of government but, on the contrary, is calculated directly to uphold and preserve that principle."

In the case of English Freight Co. v. Knox, supra, it was held that the right to appeal to the district court from an order of an administrative commission is secured by the constitutional guaranties of due process and the omission of such a provision from a statute does not deprive one aggrieved by an order entered by the commission of the right to appeal from it, because such a right is implied.

Since appellee's right to appeal to the district court from the order of the Civil Service Commission was not based upon the statute but upon his rights under the constitution and provisions of due process, he was not confined to the procedure specified by the statute. It follows that appellant's first contention must be overruled.

█ Appellant next contends that the order of the Civil Service Commission demoting the appellee from the position of captain to that of driver was reasonably supported by substantial evidence and the court erred, therefore, in vacating it. The undisputed evidence showed that, when appellee and his crew arrived at Thomas' Dinner House and entered the Rumpus Room, the proprietor and his wife were engaged in an effort to extinguish the fire in the post, where it seems to have originated from the gas stove sitting nearby. The proprietor was applying to the spot where the fire burned into the post, a chemical recognized as a fire extinguisher. The firemen immediately brought in what is called a pump bucket. They then pulled the board on the north side of the post from the bottom, springing it back far enough to insert the pump and pumped water in between it and the post. They then inspected the post and board and satisfied themselves that no fire remained on either of them. After treating the post in this manner, they inspected the entire Rumpus Room carefully and thoroughly to ascertain if the fire had reached other portions of it and discovered no fire, smoke or other evidence that any fire existed in any other portion of the room. The only burned spot on the post or board was a hole in the board about fifteen inches from the floor. Appellee mounted a table and inspected the hay on the balcony and every other portion of the entire room and he and the other two firemen testified that, when they left the building, there was no fire either in the post or any other portion of the room. These witnesses were the only persons in the room during their first visit except the proprietor and his wife who did not testify, and their testimony was clear, unequivocal and uncontradicted.

A number of witnesses testified on behalf of appellant and in support of its contentions. None of them was in the building, however, until several hours after the extinguishment of the second fire which broke out after the firemen returned to the station from their first call. Some of appellant's witnesses testified that the fire originated in the post and burned up between the post and the boards which constituted the housing around it and crept up the post into the balcony and set the hay on fire. One of them testified that he inspected the building several hours after the fire had been extinguished, including the post and the boards surrounding it. He said he pulled the north board from the bottom of the post far enough to see the post with a flashlight and that the post was charred from near the floor to at least 6 feet upward.

As we have said, none of these witnesses saw the premises or inspected the building or post until several hours after the main fire had been extinguished and none of them knew, or could have known, whether or not fire was left in the post by appellee and his crew when they returned to the station after the first call nor did they purport to know whether the main fire originated in the post or at some other place. Their testimony consisted solely of conjectures and conclusions based upon the conditions they found to exist in the post after the building had suffered serious damage by the main fire. We do not consider

these conclusions and conjectures sufficient to constitute substantial evidence which reasonably supports the allegations of negligence made by the chief of the fire department against the appellee before the Civil Service Commission nor the allegations contained in the answer of appellant upon which the case was tried. Even this testimony of appellant's witnesses was contradicted by other disinterested witnesses who had a better opportunity to observe the condition of the post than appellant's witnesses had. Several weeks after the fire a contractor assumed the duty of repairing the damage to the building. He placed a number of carpenters on the job who worked under his foreman, Willie W. Winsett. Winsett testified that he and his carpenters took out the post and replaced it with another one. He said they removed the boards from around the post on all four sides and that there were no charred places on the post or boards above about two feet from the lower end which rested upon the floor of the room and that there was no evidence of fire having crept up the post to the ceiling. Robert Sterling was one of the carpenters who assisted in removing the post. He said they removed the boards and that there were no scorched or charred places on it above approximately sixteen or eighteen inches from the bottom where it rested upon the floor. In view of the fact that appellant's witnesses examined the post only through a crack or opening made by pulling the board from the post at the bottom and by the use of a flashlight, the testimony of these carpenters, who dismantled the post and removed the casing boards from it, materially affected the expressed judgment and deductions of appellant's witnesses. The court was under the duty of considering the whole case as presented by the testimony and deciding whether the evidence as a whole was such that reasonable minds could not have reached the conclusion reached by the Civil Service Commission and we think the whole testimony, including that which we have just mentioned, was sufficient to warrant the court in concluding that its action was not reasonably supported by substantial evidence. Railroad Commission of Texas v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; M. E. Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424.

While the court is not permitted to substitute its discretion for that which is committed by law to the Civil Service Commission, it is not required to consider the testimony of one side only and close its eyes to the evidence adduced by the opposite party. It is the duty of the court to consider the record and the testimony as a whole and then determine what constitutes substantial evidence. According to the undisputed testimony in this case there was no fire in the post or anywhere else in the Rumpus Room when appellee and his crew left the premises after the first call. Conceding that, several hours after the building had been damaged and the Rumpus Room seriously burned, the post and boards surrounding it gave evidence that they had been burned, it does not necessarily follow that they were burned before the second, or main fire, nor that fire was left in them by appellee and his crew when they returned to the station after the first call. There was no evidence whatever that the second fire originated from any other place in the Rumpus Room where fire was left burning or smouldering when the firemen ceased their efforts after the first call and we think the court was fully justified in concluding that the action of the Civil Service Commission was not reasonably supported by substantial evidence.

It follows from what we have said that, in our opinion, the action of the Civil Service Commission in demoting appellee from captain to driver in the fire department was not reasonably supported by substantial evidence and the court did not err in vacating it. The judgment of the court below will, therefore, be affirmed.